UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **United States of America** <br><br> v. <br><br> **Nathaniel Ashwood**, and <br> **Lloyd Lyttle** | No. 2:24-cr-00010-JAW |

**Defendant Ashwood's Motion to Suppress**

Defendant, Nathaniel Ashwood, moves the Court to suppress out-of-court identifications and any subsequent in-court identifications of Ashwood by witnesses who selected Ashwood's photograph from what was described in discovery as "DEA Photobook 3," or any similar photobook.

**Background**

Federal law enforcement officers have been investigating an alleged act of violence occurring at 5 Cutts Street, Biddeford, Maine on July 28, 2023, and other suspected violations of federal law in or around Biddeford, Maine. To that end, the indictment charges defendants with one count of Hobbs Act Robbery, 18 U.S.C. §§ 1951(a) and 2. The discovery indicates that the alleged victim, "S. S.," was assaulted and robbed in the kitchen of an apartment at 5 Cutts Street by two individuals, and that other individuals present in the home that day were directed to either the living room or bedroom during the incident. The discovery further indicates that a FaceTime call was placed to another person during the assault. That person reportedly looked at S. S., and confirmed that S. S. had robbed him previously.

When viewing a binder containing Jencks Act material, Ashwood's attorney became aware that several witnesses who were interviewed were shown a so-called "DEA Photobook 3."

1

DEA Photobook 3 contains twenty photographs. Of the twenty photographs, those numbered as photographs 8, 10, 12, 13, 15, 17, and 18 appear to be of African American males; the others are either females or individuals of a different race or ethnicity. Four witnesses shown the DEA Photobook identified photograph 12 as Ashwood. Those witnesses' identifications are summarized as follows:

- "Witness 2" identified 15 of the 20 photographs, including identifying photograph 12 as "the big guy," presumably a reference to the person the Government contends to be Ashwood.[1] Of those photographs depicting African American males, Witness 2 identified photographs 8, 12, 13, 17, and 18.
- "Witness 6" identified 11 of the 20 photographs, not counting one person whose name Witness 6 did not remember. Witness 6 identified photograph 12 as "Nate" or "Dreads." Of those photographs depicting African American men, Witness 6 identified photographs 8, 12, 13, and 17.
- "Witness 9" identified 13 of the 20 photographs, including identifying photograph 12 as "Nate." Of those photographs depicting African American men, Witness 9 identified photographs 8, 12, 13, 15, and 18.
- "Witness 16" identified 16 of 19[2] photographs, including identifying photograph 12 as "Nate." Witness 16 identified every photograph depicting an African American male.

Apart from photograph 12, the other photographs of African American males (photographs 8, 10, 13, 15, 17 and 18) have been identified to include: (i) the co-defendant, Lloyd Lyttle; (ii) the

---

[1] Quotations may be inexact as the binder is not in defense counsel's possession.
[2] It appears that Witness 16 may not have viewed photograph 20.

alleged victim; (iii) the alias of the person reportedly on the FaceTime call; (iv) another person who was reportedly assaulted at 5 Cutts Street earlier on July 28, 2023; and (v) another individual, who was identified by name and/or alias. These individuals vary in appearance. Many of the non-African American individuals depicted are people believed to be at 5 Cutts Street on the date in question.

## Argument

"[E]yewitness evidence derived from suggestive circumstances, we have explained, is uniquely resistant to the ordinary tests of the adversary process." *Perry v. New Hampshire*, 565 U.S. 228, 252 (2012) (Sotomayor, J., dissenting). "*Regardless of how the initial misidentification comes about*, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent . . . courtroom identification." *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 383-384 (1968)). Thus, "[a]t trial, an eyewitness' artificially inflated confidence in an identification's accuracy complicates the jury's task of assessing witness credibility and reliability. It also impairs the defendant's ability to attack the eyewitness' credibility." *Id.*

For these reasons, "[p]retrial identification evidence is subject to constitutional limitations under the Due Process Clause." *United States v. Lopez-Lopez*, 282 F.3d 1, 10 (1st Cir. 2002). Such evidence should be excluded when there is "a very substantial likelihood of irreparable misidentification." *United States v. DeCologero*, 530 F.3d 36, 61 (1st Cir. 2008) (quoting *United States v. Henderson*, 320 F.3d 92, 100 (1st Cir. 2003)). Courts use a two-step test to make this determination. "The first step is to decide whether there was an impermissibly suggestive procedure." *United States v. Henderson*, 320 F.3d 92, 100 (1st Cir. 2003). If so, the

"next step is to 'decide whether the identification itself was reliable under the totality of the circumstances, notwithstanding the suggestive procedure.'" *Id.* (quoting *Lopez-Lopez*, 282 F.3d at 10-11).

At the first step, the procedure used to identify Ashwood in DEA Photobook 3 was unduly suggestive. Many people in the 20-person photobook were known to the witnesses, present at 5 Cutts Street, or otherwise associated with people of interest in the investigation. This relays to the witnesses looking through the photobook that the people in the photos are ones that the agents believed to be involved, either as a potential witness, victim, or perpetrator. Through a rudimentary process of elimination, it is obvious to the witness which person the agents believe to have played Ashwood's alleged role in the crime. Especially when considering that very few of the 20 photographs bear much, if any, any resemblance to Ashwood. Finally, it is not as if there was any significant burden in conducting a traditional, photo-array lineup. In fact, the discovery indicates that several witnesses were shown 6-person photo arrays including Ashwood and Lyttle, using more traditional methods. The pretrial identification process used in DEA Photobook 3, therefore, was unduly and unnecessarily suggestive.

Moving on to the second step of the analysis, because the process was unduly suggestive, the Court must decide whether the identifications are nonetheless reliable despite the suggestive process used. At this step, the Court must consider "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the length of time between the crime and the confrontation." *United States v. Henderson*, 320 F.3d 92, 100 (1st Cir. 2003) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200

(1972)). The government bears the burden of establishing reliability. *United States v. Jones*, 689 F.3d 12, 17 (1st Cir. 2012) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-14 (1977)).

Whether the government can carry this burden naturally depends on the circumstances of each witness's identification, and the totality of the circumstances with each. As to Witness 6 and Witness 9, the materials reviewed in the Jencks binder suggest that these witnesses *may* have some preexisting familiarity with Ashwood. If so, that familiarity may establish reliability notwithstanding the suggestive process.[3] The same does not appear to be true for Witness 2, however, who did not identify photograph 12 by name and instead referred to him as "the big guy." Finally, as to Witness 16, the materials reviewed simply consisted of the identification itself, so it is impossible to consider whether the identification is nonetheless reliable, unless there is evidence offered supporting reliability under the *Biggers* factors. In any event, until the government establishes reliability as to any out-of-court identification of Ashwood from DEA Photobook 3, Defendant Ashwood requests that those identifications be suppressed and that the witnesses be precluded from identifying Ashwood at trial. *Simmons v. United States*, 390 U.S. 377, 383 (1968) (holding that a suggestive out-of-court identification may taint a subsequent courtroom identification).

WHEREFORE, Defendant Ashwood requests that the Court suppress any out-of-court or in-court identification by witnesses who identified Ashwood from "DEA Photobook 3," or a substantially similar photobook.

---

[3] To be clear, Defendant Ashwood is not waiving his motion as to these witnesses. Instead, he simply acknowledges that the materials reviewed suggested that these anonymized witnesses *may* have pre-existing familiarity with Ashwood. And if so, that fact may be significant in the analysis.

| | |
|---|---|
| Dated: September 3, 2024 | /s/ Tyler J. Smith |
| | Tyler J. Smith (Bar No. 4526) |
| | *Attorney for Defendant* |
| | Libby O'Brien Kingsley & Champion, LLC |
| | 62 Portland Road, Suite 17 |
| | Kennebunk, ME  04043 |
| | (207) 985-1815 |
| | tsmith@lokllc.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I electronically filed the above document with the Clerk of Court using the CM/ECF system which caused a copy of this document to be served electronically on all registered parties and counsel of record.

| | |
|---|---|
| Dated: September 3, 2024 | /s/ Tyler J. Smith |
| | Tyler J. Smith, Esq. (Bar No. 4526) |
| | *Attorney for Defendant* |
| | Libby O'Brien Kingsley & Champion, LLC |
| | 62 Portland Road, Suite 17 |
| | Kennebunk, ME  04043 |
| | (207) 985-1815 |
| | tsmith@lokllc.com |